JOHN T. GORMAN
Federal Public Defender
District of Guam

ALEXANDER A. MODABER
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111
Facsimile: (671) 472-7120

Attorney for Defendant
ALEXANDER UNTALAN MESA

FILED
DISTRICT COURT OF GUAM
MAR 27 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 06-00006 |
| | ) | |
| Plaintiff, | ) | MOTION TO SUPPRESS PHYSICAL |
| | ) | EVIDENCE |
| vs. | ) | |
| | ) | |
| ALEXANDER UNTALAN MESA, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

COMES NOW the defendant, ALEXANDER UNTALAN MESA, through counsel, Alexander A. Modaber, Assistant Federal Public Defender, and moves this Honorable Court to suppress all physical evidence and the fruits thereof, including but not limited to, 7 rounds of .45 Caliber Cascade Cartridge ammunition, along with any other physical evidence and statements, derived from the vehicle stop on March 12, 2005.

This motion is based upon the Fourth Amendment to the United States Constitution,

the attached memorandum of law, declaration of counsel and any evidence which may be adduced at an evidentiary hearing in this matter.

## MEMORANDUM OF LAW

### I. FACTUAL BACKGROUND

According to the discovery provided by the government, on March 12, 2005, Guam Police Department (GPD) Officer J.Q. Manila along with Officer J.C. Ortiola were on routine patrol in a marked police car on Route 8 near the First Hawaiian Bank Building in Maite. Officer Manila observed a white, 1997 Nissan Crew Cab pickup truck swerving in and out of the lanes. The pickup truck was traveling northbound on the inner lane of Route 8 and then swerved onto the oncoming lane. Officer Manila also saw that the pickup truck's rear brake lights were going on and off as the vehicle continued to travel northbound. The pickup truck then disobeyed a red traffic light as it turned left onto Route 7A. The officers turned on their pursuit lights and siren. The pickup truck turned into the parking lot of MTM market on Route 7A and parked.

Officer Manila approached the pickup truck and found the driver to be Alexander U. Mesa. There was one other passenger, in the front passenger seat, later identified as Maria Cruz Layden. Officer Manila claimed that Mesa's eyes were blood-shot, red and watery. He asked Mesa if he knew why he was being pulled over. Alexander allegedly responded, "No, Officer." Officer Manila told Mesa that he was swerving on the roadway and that he had disobeyed the red traffic light. Mesa allegedly responded that he could not see clearly because of the tint on the pickup truck's front windshield. Officer Manila claimed that Mesa's speech was slurred and that Mesa appeared to be nervous. Officer Manila asked Mesa if he had any drugs or weapons, and if he would he give consent to search the vehicle. Mesa allegedly said, "Sure you can search." Officer Manila

2

then asked Mesa to exit the pickup truck. When Mesa exited the vehicle he allegedly handed an object to the passenger, Layden.

When Mesa stepped out of the vehicle, Officer Manila claimed he saw Mesa putting his right hand into his right pants pocket. Officer Manila told Mesa to take his hand out of his pocket but Mesa refused. Officer Manila then attempted to remove Mesa's hand from his pocket. Officer Manila claimed he then observed what appeared to be a blunt object in the front belt area of Mesa's pants. Officer Manila lifted Mesa's shirt and saw a knife clipped onto his belt. Officer Manila confiscated the knife.

Officer Manila then took Mesa to the front of the pickup truck and again instructed Mesa to remove his hand from his pants pocket. When Mesa removed his hand from his pocket, the officer allegedly observed an object fall to the ground. The object was later found to be a glass pipe commonly used for smoking methamphetamine hydrochloride or "ice". Officer Manila then told Mesa to place his hands on the pickup truck's hood, but Mesa refused and placed his hands back into his pockets. The officer then held Mesa's head to the pickup truck's hood and handcuffed him.

Officer Manila then searched Mesa's pockets and found 7 rounds of .45 caliber ammunition and a small clear plastic bag with a green leafy substance suspected to be marijuana. On the ground underneath the left front tire of the pickup truck, Officer Manila also found a small gold/green metal container, which held an even smaller, square silver container, which contained a crystalline substance believed to be "ice" and other drug paraphernalia.

Mesa and Layden were arrested and taken to the Hagatna Precinct. Officer Manila claimed Mesa was advised of his "Miranda" rights. Mesa allegedly waived those rights and signed a custodial interrogation rights form and provided a statement. (See Exhibit A, Preliminary Report

3

of Officer Manila).

Mesa respectfully contends that he committed no crimes or traffic violations prior to be stopped by the police and there was no reasonable suspicion or probable cause for police to stop and seize him.

## II. ARGUMENT

**OFFICER MANILA DID NOT HAVE REASONABLE SUSPICION OR PROBABLE CAUSE OF CRIMINAL ACTIVITY, THEREFORE THE VEHICLE STOP VIOLATED THE FOURTH AMENDMENT**

The Fourth Amendment of the United States Constitution guarantees "the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures". U.S. Const. Amend IV. The Fourth Amendment "applies to all seizures of person, including seizures that involve only brief detention short of traditional arrest." United States v. Brigone-Ponce, 422 U.S. 873, 878 (1975). Accordingly, the Fourth Amendment requires that such seizures be at a minimum, "reasonable." Id. Where the police have probable cause to believe that a traffic violation has occurred, a traffic stop and resultant temporary detention may be reasonable. Whren v. United States, 517 U.S. 806, 810 (1996). A traffic stop may also be constitutionally permissible where the officer has a reasonable belief that "criminal activity is afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). At the very least, reasonable suspicion of criminal activity is needed before stopping a subject. Id. at 30. Reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000). "Reasonable suspicion requires specific, articulable facts, which, together with 'objective and reasonable' inferences, form a basis for suspecting that a particular

4

person is engaged in criminal conduct." Id.

The government bears the burden of proving by a preponderance of the evidence that evidence derived from a Fourth Amendment violation should not be suppressed. See e.g,. United States v. Delgadillo-Velasquez, 856 F.2d 1292,1299-30 (9th Cir. 1986). Any evidence directly obtained from an illegal seizure is admissible under the "fruit of the poisonous tree" doctrine. See United States v. Hernandez, 55 F.3d 443,447 (9th Cir. 1995).

Mesa denies swerving in and out of the travel lanes. Furthermore, he denies he disobeyed a red traffic signal. Therefore, since there was no reasonable suspicion or probable cause for the vehicle stop, all evidence including, but not limited to the 7 rounds of .45 ammunition, and all other physical evidence and or statements, that were derived from the illegal vehicle stop must be suppressed.

### III. CONCLUSION

For all the reasons mentioned above, it is respectfully requested that the evidence gathered as a result of the vehicle stop be suppressed.

DATED: Mongmong, Guam, March 27, 2006.

ALEXANDER A. MODABER
Attorney for Defendant
ALEXANDER UNTALAN MESA

# Guam Police Department

Preliminary Report     Maria C. Layden (A)
Confiscated Contraband                                                Case# 05-06033

**OBSERVATION MADE:**         11:13 p.m. 03/12/05

While on routine patrol on Route 8 and First Hawaii Bank, Maite, PO1 J C Ornola and I observed a vehicle later described as a     **1997 Nissan Crew Cab 4X2 Pickup**
                                                         **Color: White   L/P# 6289 PDE**
swerving in and out of the lanes. The vehicle was traveling northbound (inner lane) and then swerved onto the oncoming lane. I then noted the vehicle rear brake lights going on and off as the vehicle continue to travel northbound. The vehicle then disobeyed a red traffic light as it turned left onto Route 7A. I then turned on my patrol vehicle pursuit lights and siren, which the vehicle later turned into the parking lot of MTM Market, MongMong

**OPERATOR CONFRONTED/IDENTIFIED:**     11:15 p.m. 03/12/05

I confronted the operator later identified to be     **Alexander Untalan Mesa**
                                                      **Male/Gua./10-05-55**
                                                      **SS#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 (H)477-6115**
                                                      **Paasan Street, Agana Heights**

I noted that Alexander's eyes were blood shot red and watery. I asked Alexander if he knew why I pulled him over, which he stated, "No, Officer". I informed Alexander that he was swerving on the roadway and disobeyed the red traffic light. Alexander stated that he could not see clearly because the front windshield is tinted all the way down making it difficult to see out. I then noted that Alexander's speech was slurry and he appeared nervous. I asked Alexander if he had any drugs or weapons and would he give consent to search the vehicle, which he stated, "Sure you can search". I asked Alexander to exit the vehicle, which I noted him handing an object to his passenger. The passenger was later identified to be    **Maria Cruz Layden**
                                    **Female/Gua./2-13-64**
                                    **SS#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 (H)472-2866**
                                    **#1759 Halsey Drive, Nimitz Hill Piti**

Alexander stepped out of the vehicle and I noted him putting his right hand into his right pants pocket. I instructed Alexander to take his hand out of his pocket, but he refused. At this point I attempted to remove Alexander's hand from his pocket and noted a blunt object in the front of his pants (belt) area. As I lifted his shirt, I noted a knife clipped onto his belt. I immediately removed the knife and placed it on the back of the vehicle. I then escorted Alexander to the front area of the vehicle and again I instructed him to remove his hand from his pants pocket, which he complied. I then noted an object fall to the ground. I noted that the object was a glass pipe used commonly for the drug ICE (methamphetamine). I then instructed Alexander to place both hands on top of the vehicle hood, which he refused and place his hand back into his right pants pocket. I then held Alexander's head to the hood of the vehicle to refrain his movement and instructed him to place his hands backward, which I then secured my handcuff on him. As I continued to search Alexander's pants pocket, I noted about 7 bullets, a small clear plastic bag with a green leaf like substance suspected marihuana, silver square container. I then looked on

PO2 J.Q. Manila #377
Officer Assigned



Approving Supervisor

the ground underneath the left front tire of the vehicle and noted a round gold and green metal container. I then opened the gold/green metal container to include the silver square container and noted substance possibly the drug ICE and several drug paraphernalia. I then confiscated the items mentioned from Alexander relative to this investigation. Refer to the attached Guam Police Evidence Custody Receipt for details.

**MIRANDA RIGHTS ADVISED:**     11:25 p.m. 03/12/05

I advised Alexander his constitutional rights via Miranda Warning card, which he acknowledged.

**NOTE:** I then placed Alexander into my patrol vehicle and later transported him to Hagatna Precinct for further investigation. Officer Ortiola then conducted a search of the vehicle and confiscated several items to include drug paraphernalia and suspected drugs. Maria Layden was also transported to Hagatna Precinct by PO3 T E Certeza. While transporting Alexander to Hagatna Precinct he stated that he will tell me everything about the drugs found on him. While at Hagatna Precinct, I received information from Officer Ortiola that female officer Sgt E C Flickinger while at Hagatna Precinct located two suspected marihuana cigarette sticks and a glass ICE pipe in Maria's purse inside a Kool cigarette box. Officer Ortiola also stated that she found a clear glass tube inside Maria's black leather wallet along with her ID's and credit cards. Refer to PO1 J C Ortiola's Supplement Report for details.

**CONSTITUTIONAL RIGHTS ADVISED:**     12:14 a.m. 03/13/05

While at Hagatna Precinct, I advised Alexander his constitutional rights via Custodial Interrogation Rights form, which he acknowledge and signed. Refer to the attached Custodial Interrogation Rights form.

**ALEXANDER INTERVIEWED:**     12:20 a.m. 03/13/05

I interviewed Alexander who admitted to having the drug ICE, Marijuana and bullets in his pants pocket. Alexander stated that he found the bullets at his brother's residence, but he does not have a gun in his possession or in the vehicle. Alexander also admitted to handing his passenger Maria his pack of cigarettes with the two Marijuana joints and glass pipe inside. I asked Alexander about the glass pipe found inside Maria's black leather wallet, which he stated that the glass pipe is not his. I asked Alexander where did he get the drugs from, which he stated from a friend named James Lujan who resides at Sinajana. Alexander stated that on Friday night he went to visit James and was given a sealed straw with the drug ICE and a small clear plastic bag with Marijuana. Alexander stated that James told him to come back to his residence tonight (3/12/05) because he will be receiving some load (meaning the drug ICE). Alexander stated that he is willing to cooperate with police to conduct a controlled buy from James. Alexander refused to provide a written statement.

PO2 J.Q. Manila # 377     **OPEN**     *Approving Supervisor*
Officer Assigned

# Guam Police Department

Preliminary Report     Maria C. Layden (A)
Confiscated Contraband     Case# 05-06033

**CONSTITUTIONAL RIGHT ADVISED:** 12:32 a.m. 03/13/05

*I advised Maria Cruz Layden her constitutional rights via Custodial Interrogation Rights form, which she acknowledged and signed. Refer to the attached Custodial Interrogation Rights form.*

**MARIA INTERVIEWED:** 12:35 a.m. 03/13/05

*I interviewed Maria who stated that she had her vehicle in Dean Mesa's Automotive Shop for repairs. Maria stated that Dean or Alexander would take her to and from work everyday. Tonight (3/12/05) Alexander came late on picking her up from work. Maria stated that when the police pulled over Alexander handed her his box of Kool cigarettes to hold. Maria stated that she did not know what was inside the box of cigarettes and placed it into her purse. I asked Maria who owns the glass pipe that was inside her black leather wallet along with her ID's. Maria stated that the glass pipe belongs to Alexander. Maria denied having knowledge that Alexander was carrying drugs in her vehicle. Maria concluded that she does not use or sell drugs. Maria refused to provide a written statement.*

**NOTE:** *While at Hagatna Precinct about 1:52 a.m. (3/13/05), PO3 T.E. Certeza obtained a representative sample from exhibit #2 using the NIK Marquis Reagent Field Test Kit A, said sample tested presumptive positive for amphetamines. I contacted Sgt. J.T. Davis (Violent Street Crime Taskforce-VSCTF) and apprized him of the investigation, which he stated he will send two of his personnel. PO3 R.A. Barcinas and PO2 M.R. Desamito arrived shortly thereafter, whereas about 2:10 a.m. (3/13/05) I relinquished Alexander Untalan Mesa to their custody.*

**ARRESTED PERSON:** 2:00 a.m. 03/13/05

*I arrested Maria Cruz Layden for the following offenses* **Possession of a Controlled Substance (Schedule II), Criminal Facilitation and Guilt Established by Complicity.** *She was processed at the Guam Detention Facility and later booked and released. Refer to the attached arrest records.*

**RECOMMENDATION:**

*Since an arrest have been made relative to this investigation, I recommend this case remain OPEN and copies forwarded to Violent Street Crime Taskforce for their follow up regarding Alexander Mesa. Also, copies be forwarded to the Attorney General's Office for their information and disposition.*

PO2 J.Q. Manila # 377     OPEN     *Approving Supervisor*
Officer Assigned

## CERTIFICATE OF SERVICE

I, RENATE DOEHL, hereby certify that a true and exact copy of the foregoing document was duly mailed and/or hand-delivered to the following on March 27, 2006:

RUSSELL C. STODDARD
First Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam 96910

Attorney for Plaintiff
UNITED STATES OF AMERICA

DATED: Mongmong, Guam, March 27, 2006.

*/s/ RENATE DOEHL*

RENATE DOEHL
Operations Administrator

ALEXANDER A. MODABER
Attorney for Defendant